## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Antoine Simmons (#2010-0729259), | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10 C 670 |
| | ) | |
| Officer Gregory McCulloch, et al., | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Antoine Simmons, an inmate in the custody of the Cook County Department of Corrections, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, two correctional officers at the jail, violated his constitutional rights by acting with deliberate indifference to his safety. Specifically, the plaintiff alleges that the defendants failed to prevent a sudden attack by a razor-wielding fellow inmate. The plaintiff additionally contends that the officers stood by and watched without intervening as he was chased around the tier while screaming for help. This matter is before the court for ruling on the parties' cross-motions for summary judgment. For the reasons stated below, the defendants' motion for summary judgment is granted, and the plaintiff's motion is denied.

### I.    Standard on a Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine

the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

## II.      Background

### A.      Local Rule 56.1 (N.D. Ill.)

The defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with their motion for summary judgment, the defendants included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" [document no. 81], as required by circuit precedent. That notice clearly explained the requirements of the Local Rules and warned the plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004). "We have ... repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

Despite the admonitions stated above, the plaintiff failed to file a proper response to the defendants' statement of uncontested facts. The defendants correctly point out in their motion to strike that the plaintiff, in his Local Rule 56.1(e) statement: (1) improperly includes additional information rather than admitting or denying the defendants' assertions; (2) makes legal arguments; (3) makes conclusory assertions, unsupported by evidence; and (4) fails explicitly to admit or deny

certain stated facts. The plaintiff is advised that statements in a brief are not evidence and are not entitled to any evidentiary weight. *See, e.g., Topi v. Mukasey* 264 Fed. Appx. 504, 506 (7th Cir. 2008); *Wilson v. Hosey*, No. 09 C 7777, 2012 WL 957488, *7 (N.D. Ill. Mar. 15, 2012) (citations omitted).

Nevertheless, because the plaintiff is proceeding *pro se*, the court will grant him considerable leeway and take into account the factual assertions he makes in his summary judgment materials. However, the court will entertain the plaintiff's factual statements only insofar as he could properly testify about the matters asserted. *See* Fed. R. Evid. 602. The defendants' motion to strike is accordingly denied to the extent that the plaintiff's statement asserts facts that are supported by the record or about which the plaintiff could testify.

Therefore, the defendants' Rule 56.1 statements of fact are accepted as true for the purposes of summary judgment to the extent that they are supported by the record and not properly rebutted by the plaintiff. Moreover, to meet its obligation to view the record in the light most favorable to the non-movant and because the plaintiff is proceeding pro se, the court has supplemented the defendants' statement of facts with testimony provided by the plaintiff during his deposition.

**B.     Facts**

Plaintiff Antoine Simmons is a pretrial detainee in the custody of the Cook County Department of Corrections. (Defendants' Exhibit II, Deposition of Antoine Simmons, at p. 6.) Defendant Gregory McCulloch is a correctional officer at the jail, and was the plaintiff's tier officer during the time period in question. (Defendants' Exhibit III, Affidavit of Greg McCulloch, ¶¶ 1 and 2.) Defendant Printiss Jones is also a correctional officer [currently a sergeant] at the jail.

(Defendants' Exhibit IV, Affidavit of Printiss Jones, ¶ 2.) Jones was McCulloch's back-up officer on the date in question. (*Id.*, ¶ 4; Plaintiff's Dep., p. 63.)

During the relevant time period, the plaintiff was assigned to Division 9, Tier 2H at the jail. (Plaintiff's Dep., p. 12.) That division is a "super maximum security" unit. (*Id.*, pp. 13-14; McCulloch Affidavit, ¶ 2; Jones Affidavit, ¶ 3.)

The plaintiff and his cellmate, Cheo Iburra, had been cellmates for about two or three weeks prior to the events giving rise to this lawsuit. (Plaintiff's Dep., pp. 13, 15.) The plaintiff and Iburra were both "cool" with each other up to that time; they got along well, mostly left each other alone, and "did their own thing." (*Id.*, pp. 15-16.) On the morning of April 14, 2009, however, the plaintiff and Iburra exchanged words. (*Id.*, p. 18.) It was not really an argument, but the plaintiff told Iburra to stop harassing a neighboring detainee whom Iburra perceived to be homosexual. (*Id.*, pp. 18, 21, 25.) The plaintiff remarked that the other inmate was not bothering anyone, but Iburra responded that males should not be effeminate. (*Id.*, pp. 18, 21-22.) The plaintiff expressed concern that Iburra's bullying of the other fellow might result in a lockdown of the whole tier. (*Id.*, pp. 22-23.)

An officer (Woods-Fugate, who is not a defendant) who saw the two inmates appear to be arguing immediately moved them into separate cells. (*Id.*, pp. 18, 26.) The plaintiff was placed in a cell with another inmate on the tier whom he considered close enough to be a cousin (Gino Wilson). (*Id.*, pp. 17, 26.) The plaintiff reportedly asked Woods-Fugate to move Iburra to a different tier altogether; he believes that she would have told the shift sergeant, who would then have alerted the defendant officers when they arrived for their shift. (*Id.*, p. 24.) In fact, according to the plaintiff, defendant McCulloch at some point indicated that he had heard Iburra and the plaintiff had "got into

it," and assured the plaintiff that the administration was trying to move Iburra to another deck. (*Id.*, pp. 19-20, 63.) The plaintiff and Officer McCulloch had always been cordial with each other. (*Id.*, p. 50.)

That evening, defendant McCulloch let the plaintiff, Iburra, Wilson, and the other detainees who occupied the tier out of their cells for their recreational hour. (*Id.*, pp. 17, 19; McCulloch Affidavit, ¶ 6.) Iburra began working out under the stairs. (Plaintiff's Dep., p. 28.) The plaintiff used the telephone for about five minutes, then Wilson asked him to apply Magic Shave to his hairline in lieu of a haircut because it is difficult to obtain barber services at the jail. (*Id.*, p. 26.)

As the plaintiff was attending to Wilson, Iburra suddenly came rushing up from behind and "sliced" Wilson on the back of his neck with a razor. (*Id.*, pp. 20, 27, 28.) The attack took the plaintiff by surprise. (*Id.*, p. 28.) Although the plaintiff tried to run away, Iburra slashed him, too, in his neck and back. (*Id.*, pp. 20, 29, 36.) An officer threw the plaintiff blankets to use to shield himself; the plaintiff then wrapped his covered arms around Iburra and tried to wrest the razor from him. (*Id.*, pp. 20, 29, 32.) The plaintiff and Iburra fell to the floor, with the plaintiff holding Iburra and Iburra digging a razor into the plaintiff's back. (*Id.*, p. 21.) The plaintiff lay on top of Iburra until he knew the correctional officers were ready to rush into the dayroom. (*Id.*) In the meantime, the other inmates "holler[ed] and kick[ed] the doors," demanding that officers step in to subdue Iburra. (*Id.*, pp. 50-51.)

It is undisputed that the attack was wholly unexpected; it happened suddenly and without warning. (Plaintiff's Dep., p. 28; McCulloch Affidavit, ¶ 19; Jones Affidavit, ¶ 18.) The plaintiff had never fought with Iburra or been threatened by him prior to the assault. (Plaintiff's Dep., p. 34.) The plaintiff was not afraid of Iburra, had not told the defendants or any other official that he feared

for his safety, and had not requested placement in protective custody. (*Id.*, pp. 24, 34, 39-40, 53; McCulloch Affidavit, ¶¶ 17, 18; Jones Affidavit, ¶¶ 16-19.) In addition, prior to the incident, the plaintiff had no idea that Iburra was considering an attack on him. (Plaintiff's Dep., p. 63.).

The tier officers monitor the dayroom from a platform known as the "bubble." (McCulloch Affidavit, ¶¶ 4, 5; Jones Affidavit, ¶ 5.) The bubble has glass windows and sits five to six feet above ground level. (McCulloch Affidavit, ¶ 5; Jones Affidavit, ¶ 5.) The bubble is set up so that officers can view the dayroom. (McCulloch Affidavit, ¶ 5; Jones Affidavit, ¶ 5.) Both McCulloch and Jones were in the bubble at the time of Iburra's attack. (McCulloch Affidavit, ¶ 4; Jones Affidavit, ¶ 4.)

When the officers saw a fight break out and Wilson and Iburra begin "swinging" at each other, they both radioed for backup. (McCulloch Affidavit, ¶¶ 7-9; Jones Affidavit, ¶ 11.) The defendants watched and videotaped the incident as the inmates moved about the room, swinging their fists at each other. (McCulloch Affidavit, ¶ 7-9; Jones Affidavit, ¶ 11.) At one point, Iburra jumped on a table and shouted, "I'm an Israeli and I'm going to kill." (Plaintiff's Dep., pp. 30-31.) The officers could see that Iburra held a sharp metal object and that he had cut the plaintiff and Wilson. (McCulloch Affidavit, ¶ 9; Jones Affidavit, ¶ 7.)

Neither defendant left the bubble during the incident until help arrived. (McCulloch Affidavit, ¶¶ 12, 21; Jones Affidavit, ¶ 10.) For reasons of safety and security, a tier officer is not permitted to go into a dayroom when inmates are fighting. (McCulloch Affidavit, ¶ 10; Jones Affidavit, ¶ 20.) Instead, the tier officer must call a "10-10" to request assistance. (McCulloch Affidavit, ¶ 10.) In addition, because Division 9 is a super maximum security unit, correctional officers are not allowed to enter the dayroom after a "10-10" has been called until a supervisor arrives at the scene.[1]

---

[1] The plaintiff baldly asserts that "this is clearly another lie." *See* Plaintiff's Local Rule
(continued...)

(McCulloch Affidavit, ¶ 13; Jones Affidavit, ¶ 20.)  McCulloch never left the tier during the incident, but rather joined the responding officers as Jones videotaped the incident, as is apparently protocol for disturbances in Division 9.  (McCulloch Affidavit, ¶ 21; Jones Affidavit, ¶ 10.)

"A lot" of responding personnel arrived within two to three minutes of Iburra's lashing out at the plaintiff and Wilson.  (Plaintiff's Dep., p. 34; McCulloch Affidavit, ¶ 8; Jones Affidavit, ¶ 11.)  While waiting for a supervisor to arrive, the responding officers called out encouragement to the plaintiff, as well as [unspecified] "verbal orders" to all three inmates.  (Plaintiff's Dep., pp. 30, 33; McCulloch Affidavit, ¶ 12.)  Supervisors arrived a few minutes later.  (Plaintiff's Dep., p. 34; McCulloch Affidavit, ¶ 8; Jones Affidavit, ¶ 11.)  Once supervisors arrived at the scene, seven or eight officers surged into the dayroom and "tackled" Iburra.  (Plaintiff's Dep., pp. 21, 33.)  All three inmates peaceably submitted to being restrained.  (Jones Affidavit, ¶ 11.)  In total, it took about seven or eight minutes before the officers entered the room and quelled the disturbance.  (Plaintiff's Dep., p. 31; McCulloch Affidavit, ¶ 12; Jones Affidavit, ¶ 11.)  The officers recovered two small, sharp, razors from Iburra's mouth after he spat them out.[2]  (Plaintiff's Dep., pp. 42, 68-69.)

Afterwards, the plaintiff's wounds were sutured and he was given ibuprofen for pain. (Plaintiff's Dep., pp. 44, 46, 49.)  None of the three inmates was seriously hurt.  (Jones Affidavit, ¶

---

[1](...continued)
56.1 statement at p. 11.  However, he provides no admissible basis for refuting the defendants' affidavits.  To the contrary, the plaintiff explicitly admitted during his deposition that he is unfamiliar with how correctional officers are trained or supervised.  *See* Plaintiff's Dep., at p. 47.

[2]The defendants state in their affidavits that one razor-like implement was found on Iburra's person, and that Iburra had made the weapon by hand.  The plaintiff, in contrast, maintains that Iburra had two, jail-issued shaving razors.  The court will accept the plaintiff's account as true for purposes of summary judgment.  The court may grant summary judgment if facts are in dispute, so long as those facts are not outcome determinative.  *See, e.g., Outlaw v. Newkirk*, 259 F.3d 833, 840-41 (7th Cir. 2001); *Matter of Wildman*, 859 F.2d 553, 556 (7th Cir. 1988); *In re NeoPharm, Inc. Securities Litigation*, 705 F. Supp. 2d 946, 962 (N.D. Ill. 2010).

15.)   Defendant McCulloch issued disciplinary reports against all three inmates for fighting. (McCulloch Affidavit, ¶ 15.)  The plaintiff did not request placement in protective custody after the incident.  (Plaintiff's Dep., pp. 52-54.)

## III.   Analysis

For the following reasons, the court concludes that the record shows that the defendants are entitled to judgment as a matter of law as even viewing the record in the light most favorable to the plaintiff, no reasonable person could find that the defendants acted with deliberate indifference to his safety.  Although it is most regrettable that a fellow detainee attacked the plaintiff, the defendants cannot be held liable either for the sudden and unexpected assault or for failing to enter the fray.

### A.   Failure to Prevent the Assault

Jail officials have a duty to protect inmates from violent assaults by other inmates.  *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 669 (7th Cir. 2012) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  The Constitution imposes on jail officials a duty to "take reasonable measures to guarantee the safety of the inmates and to protect them from harm at the hands of others."  *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832-33.  Correctional officials incur liability for the breach of that duty when they are aware of a substantial risk of serious injury to an inmate but nevertheless fail to take appropriate steps to protect him from a known danger.  *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010).

In order to demonstrate that he has a Fourteenth Amendment claim, the plaintiff must make a triable showing that:  (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) defendant-officials acted with "deliberate indifference" to that risk.  *Santiago*, 599 F.3d

at 756; *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). The evidence in this case would not support a finding that jail officials were aware of but did not appropriately respond to a substantial risk that the plaintiff might be assaulted.

### 1.    Objective Prong

Under the first prong of a failure to protect claim – considered the objective prong – a plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Estate of Miller ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012). To meet this standard, a plaintiff must demonstrate not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Santiago*, 599 F.3d at 758. "When [Seventh Circuit] cases speak of a 'substantial risk' that makes a failure to take steps against it actionable under the Eighth or Fourteenth Amendment, they also have in mind risks attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals; to 'highly probable' attacks; and to particular detainees who pose a 'heightened risk of assault to the plaintiff.'" *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005); *Washington v. Bryant*, No. 11 C 8184, 2012 WL 589031, *2 (N.D. Ill. Feb. 16, 2012).

This general definition of "substantial risk" includes, of course, "risks so great that they are almost certain to materialize if nothing is done." *Brown*, 398 F.3d at 904; *Washington*, 2012 WL 589031 at *2. However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. A "mere possibility of violence" or the occurrence of a random act of violence is insufficient to impose liability on prison officials. *Miller v. Turner*, 26 Fed. Appx. 560, 563 (7th Cir. 2001); *see also Thompson v. Dart*, No. 09 C 6854, 2011 WL 2038737, *8 (N.D. Ill. May 24, 2011) ("Prisoners

are dangerous (that's why many are confined in the first place).... Some level of brutality and sexual aggression among them is inevitable no matter what the guards do"); *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004) ("[P]risons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more.... All that can be expected is that guards act responsibly under the circumstances that confront them"); *Washington v. LaPorte County Sheriff's Department*, 306 F.3d 515, 519 (7th Cir. 2002) ("[A]n unfortunate random act of violence in a prison ... does not impose liability on prison officials").

Here, the plaintiff has failed to show that a serious risk of substantial harm existed. In the weeks leading up to the attack, the plaintiff and Iburra were "cool" and lived together without incident. Even on the date in question, although the plaintiff told Iburra to leave a fellow detainee alone, the plaintiff repeatedly stated during his deposition that the words he exchanged with Iburra were not argumentative. Iburra did not threaten the plaintiff, and prior to the attack, the plaintiff did not fear for his safety. Moreover, when released from his cell, Iburra did not rush out and attack the plaintiff; instead, he began exercising as the plaintiff made a phone call. Iburra had not even argued with his initial victim, Wilson.

In sum, the record shows that the attack was wholly unexpected. It is most regrettable that the plaintiff was the victim of random violence. Nevertheless, he has not demonstrated that he was aware of a substantial risk of serious harm prior to the assault. The defendants could not have been expected to have foreseen an attack that the plaintiff himself did not anticipate.

## 2. Subjective Prong

In order to satisfy the subjective prong, a plaintiff must show that the defendant acted with deliberate indifference to the substantial risk of serious harm. *Farmer*, 511 U.S. at 838; *Brown*, 398

F.3d at 913. The subjective prong has two subparts: (a) knowledge of the risk, *Brown* at 913, and (b) a disregard of that risk. *Id.* at 916. Generally, a plaintiff can prove that prison officials were aware of a specific, impending, and substantial threat to his safety by showing that he complained to prison officials about the danger. *Morris v. Ley*, 331 Fed. Appx. 417, 419 (7th Cir. 2009); *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996); *Jones v. Hardy*, No. 11 C 0699, 2012 WL 1133797, *3 (N.D. Ill. Apr. 4, 2012). Although this is a subjective test, it may be proven through circumstantial evidence. *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") (internal citation omitted).

To be held liable under 42 U.S.C. § 1983, the defendant "must both be aware of the facts from which an inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913; *Riccardo*, 375 F.3d at 525. Negligence or even gross negligence is insufficient to implicate the Constitution; for liability to attach under 42 U.S.C. § 1983, the officer must have acted with "the equivalent of criminal recklessness." *Guzman*, 495 F.3d at 857 (quoting *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005)). The relevant inquiry is whether correctional officials actually knew about the danger that the plaintiff faced, not whether a reasonable official should have known. *Case v. Ahitow*, 301 F.3d 605, 605 (7th Cir. 2002) (distinguishing deliberate indifference from negligence); *Truidalle v. Taylor*, No. 11 C 1170, 2011 WL 6780690, *4 (N.D. Ill. Dec. 23, 2011).

In the instant case, even viewing the record in the light most favorable to the plaintiff, the facts do not support an inference that the defendants acted with deliberate indifference to a

substantial risk of known harm. Again, it is undisputed that the plaintiff never expressed any concern about his safety to the defendants or to any other correctional officer prior to the attack. Instead, the attack came out of the blue, and Iburra first targeted an inmate with whom he apparently had no dispute. Actual knowledge cannot be imputed to a prison official if the plaintiff himself was unaware of a specific threat. *Guzman*, 495 F.3d at 857-58.

This conclusion is not altered by the plaintiff's argument that Iburra was moved to a different cell just prior to the attack and that defendant McCulloch assured the plaintiff that staff was working to move Iburra to a different tier. Based on these facts, the plaintiff argues that the defendants must have known that Iburra posed a danger to the plaintiff. The court disagrees. Again, the plaintiff reiterated throughout his deposition that his interaction with Iburra prior to the attack did not rise to the level of an argument. The correctional staff cannot be faulted for having taken proactive steps to avoid trouble. Even if the officers vaguely sensed a developing incompatibility that the plaintiff himself did not worry about, the fact remains that there were no threats, posturing, or angry enough words to cause concrete concern.

In short, the record is devoid of evidence to support the plaintiff's claim that the defendants acted with deliberate indifference to a strong likelihood of attack. A motion for summary judgment "requires the responding party to come forward with the evidence that it has – it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted); *Fisher v. Lovejoy*, No. 01 C 9085, 2004 WL 2534421, *6 (N.D. Ill. Sep. 28, 2004), aff'd 414 F.3d 659 (7th Cir. 2005) (granting summary judgment where, in the absence of proof from the plaintiff, a jury "would have to engage in pure speculation" as to whether the defendant had acted

with deliberate indifference to the risk of an attack). The evidence does not suggest any sign of impending danger, let alone a danger so pervasive as to render the defendants liable.

In sum, the generalized possibility of jail violence, rather than a specific risk of serious harm, does not implicate the Constitution. Thus, the plaintiff has failed to articulate a basis for Fourteenth Amendment liability with regard to the sudden, unexpected attack by a fellow detainee not known to be an enemy.

**B.** **Failure to Intervene**

The plaintiff next contends that defendants should have attempted, on their own, to disarm Iburra when he launched his attack. Correctional officers are not required to put themselves at risk by breaking up a fight between inmates armed with weapons. *Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002) (citing *MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995) (failing to intervene between inmates fighting with weapons does not constitute deliberate indifference); *Arnold v. Jones*, 891 F.2d 1370, 1373 (8th Cir. 1989) (if intervening in a prison fight could cause serious injury, guards have no duty to do so as a matter of law); *see also Lemon v. Joyce*, No. 10 C 4840, 2010 WL 3168311, *3 (N.D. Ill. Aug. 5, 2010) (prosecutor had no obligation to put herself at risk by joining a courtroom melée). In fact, the defendants have submitted affidavits explaining that in the plaintiff's super maximum security housing division, correctional officers are specifically prohibited from entering the dayroom after a "10-10" has been called until a superior officer arrives at the scene.

The actions taken by the defendants when the fight broke out belie any inference of deliberate indifference. Even if an official is found to have been aware that the plaintiff was at substantial risk of serious injury, he is free from liability if he responded to the situation in a reasonable manner. *Farmer*, 511 U.S. at 847; *Fisher*, 414 F.3d at 664; *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760,

765 (7th Cir. 2005). The defendants took appropriate steps once the fight broke out, immediately calling out a "10-10" for officers to assist in restoring order. Although the defendants were not allowed to leave the "bubble," they did all they could do while they waited for supervisors to arrive: they shouted orders at Iburra, as well as warnings and encouragement to the plaintiff and Wilson. The defendants were not constitutionally required to confront an inmate armed with a razor (or two razors, as the plaintiff contends); indeed, to have done so would have been contrary to express jail policy. The plaintiff's deliberate indifference claim based on the defendants' failure to intervene is thus unavailing.

## IV.    Conclusion

For the above reasons, the plaintiff's "motion of exhibits" [#89] is granted as the court has reviewed and considered the plaintiff's exhibits. The defendants' motion to strike [#94] the plaintiff's response to their statement of facts granted in part and denied in part as detailed in this order. The plaintiff's motion for summary judgment [#92] is denied and the defendants' motion for summary judgment [#80] is granted. The clerk is directed to enter a Rule 58 judgment in favor of the defendants and terminate this case from the court's docket.

If the plaintiff wishes to appeal this final judgment, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The plaintiff is warned that if a prisoner has

15

had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a

claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent

danger of serious physical injury. *Id.*


Date: August 8, 2012

Blanche M. Manning
United States District Judge